Not Recommended for Publication or Citation

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 07-CV-164-GFVT

JOSEPH R. MCKENZIE                                                              PLAINTIFF

VS:                    **MEMORANDUM OPINION AND ORDER**

HECTOR A. RIOS, JR. ET AL                                                    DEFENDANTS

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

Plaintiff Joseph R. McKenzie, an individual currently incarcerated in the United States Penitentiary-Big Sandy ("USP-Big Sandy"), in Inez, Kentucky has filed a *pro se* complaint, seeking damages and other relief under 28 U.S.C. § 1331 and the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). His complaint was accompanied with three motions. The motion to proceed *in forma pauperis* will be granted by separate order.

The complaint is before the Court for screening pursuant to 28 U.S.C. § 1915(e). *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997). As Plaintiff is appearing *pro se*, his pleadings are held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the allegations in a *pro se* litigant's complaint are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). But the Court may dismiss a case at any time if it determines the action is frivolous or malicious or fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2).

CLAIMS

Plaintiff claims that the Defendants, all employees of the Federal Bureau of Prisons ("BOP"), have denied him appropriate medicine for a serious medical condition in violation of (1) the U.S. Constitution's Eighth Amendment prohibition against cruel and unusual punishment; (2) the Constitution's equal protection clause; and (3) the Americans with Disabilities Act.

DEFENDANTS

As the Defendants, the Plaintiff has named USP-Big Sandy's (1) Warden Hector A Rios, Jr.; (2) former Health Services Administrator F. Terrera-Leibel; (3) Health Services Administrator S. Slone; (4) Physician's Assistant ("PA") H. Sexauer; and (5) Clinical Director R. Rameriz. Additionally, he has named (6) the Regional Director for the BOP's Middle-Atlantic Region, K.M. White, and (7) the BOP's Director of National Inmate Appeals, H. Watts.

RELIEF REQUESTED

Plaintiff seeks trial by jury; declaratory and injunctive relief; and damages.

FACTUAL ALLEGATIONS

Plaintiff has submitted a handwritten complaint to which he has attached a stack of exhibits. The following is a summary or construction of the information contained in these documents. Record No. 2.

Plaintiff alleges that for more than 3 years he has suffered from Gastroesophageal Reflux Disease ("GERD"), a serious medical condition which is painful and can lead to more serious health problems such as cancer.[1] He was first diagnosed while imprisoned elsewhere and was prescribed "Ranitidine (Zantac) 150mg tablets to be taken twice daily and two antacids to be

---

[1] Plaintiff's exhibits include several articles on GERD.

taken before each meal."

McKenzie writes that he was transferred to USP-Big Sandy on September 20, 2006, and shortly thereafter the PA Defendant, Sexauer, prescribed Zantac 150mg to be taken twice daily for the GERD. Plaintiff was provided with this drug for 90 days. However, sometime in December of 2006, Defendants Leibel and Ramirez purportedly decided to treat GERD as a minor ailment in order to save money. The prison, therefore, stopped supplying Plaintiff with the Zantac and told him to buy it in the prison commissary.

Plaintiff claims that he had to do without the medication from January 5, 2007, through July 20, 2007, because he is indigent and could not afford to buy it at the commissary. During this period of time, he allegedly suffered severe heartburn, developed a chronic dry cough, had difficulty swallowing, experienced sudden excesses of saliva, and had trouble sleeping, all because he could not take the Zantac. During the time without the medication, McKenzie contends, his esophagus was being eroded. He also alleges that even though he has now been put back on medication for GERD, he still experiences some of these symptoms and he has had to take a "stronger medication" than his previous prescription.

During the 6 ½ months that he was off the medication, McKenzie claims to have repeatedly gone to the clinic, asking Sexauer for the medication but being denied on the ground that Plaintiff was not indigent. He complains further that at one point the PA told him that he would need to do a blood work-up to diagnose that the Plaintiff actually had GERD, but he then delayed taking the blood for 54 days; then in May of 2007, the PA allegedly ordered "an upper GI," but as of July 23, 2007, when McKenzie signed the complaint, nothing had been done.

Plaintiff began the BOP administrative remedy process to resolve the matter shortly after

3

being denied the medication, in January of 2007, and that process was completed with the June 29, 2007, response of Defendant Watts. Watts' position was that the Plaintiff's condition was being appropriately monitored at the prison clinic; and certain types of minor complaints are, by policy, to be taken care of by the prisoners with commissary "over-the-counter" medication. Also, with regard to the Plaintiff's not being supplied with the Zantac, this Defendant wrote, "You were not prescribed medication for your GERD by staff as you were not considered to be indigent (an inmate who has not had an account balance of $6.00 in their trust fund account for the past 30 days)." Exhibit dated June 29, 2007.

Plaintiff's opinion is that once the administrative remedy procedures had thus been exhausted and he was making known his intent to file this lawsuit, it was only then that he finally received appropriate medication. This occurred on July 20, 2007, with McKenzie receiving "14 300mg Zantac tablets with instructions 'to be taken twice daily.'" He states that he has interpreted this as an admission of guilt, *i.e.*, the BOP should have been providing him the medication all along.

McKenzie states that prison records will show that during the period that he was denied the medication he sought, he was at all times indigent and in need of the medication. With regard to the financial issue, Plaintiff has written as follows:

> The medication sold in the commissary contains 20 75mg tablets per box for $5.05. When taken at the dosage prescribed for McKenzie prior to 7/10/2007, he would use one box every 5 days. This results in a cost of $1.01 per day to treat himself for his disease. As shown on prisoner financial records, if McKenzie neglected all of his hygiene, communication, and other needs, he still could not have treated himself for longer than 25 days since he ran out of the medication on 1/6/07.

Record No. 2, ¶ 93. Plaintiff seeks a declaration that the Defendants' acts violated his federal

rights; injunctive relief in the form of ordering the Defendants to continue to provide any and all medical treatment and medications hereafter; and damages, both compensatory and punitive.

DISCUSSION

The Court begins with the requirements for stating a claim under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). To state a claim that is cognizable as a *Bivens* action, the plaintiff must plead two essential elements. He must show, first, that he has been deprived of rights secured by the Constitution or laws of the United States and, second, that the defendants allegedly depriving him of those rights acted under color of federal law. *Bivens*, 403 U.S. at 397.

The instant Plaintiff has appropriately alleged violations of his federal rights by the conduct of the federal employees named as Defendants. However, the plaintiff in a civil rights lawsuit must do more than make these broad allegations. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). He must assert that each defendant was personally involved in any complained-of action. *See Williams v. Faulkner*, 837 F.2d 304, 308 (7th Cir. 1988); *Boyce v. Alizaduh*, 595 F.2d 948, 953 (4th Cir. 1979). A plaintiff cannot recover against anyone on a *respondeat superior* theory of liability. *Polk County v. Dodson*, 454 U.S. 312, 325-26 (1981); *Williams*, 837 F.2d at 308; *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984), *cert. denied*, 469 U.S. 845 (1984). *Respondeat superior* cannot impute liability onto supervisory personnel in a civil rights lawsuit. In order to find them liable, the plaintiffs must allege that the supervisors condoned, encouraged or participated in the alleged misconduct. *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989).

Plaintiff McKenzie alleges specific actions or inactions which purportedly show deliberate indifference to his serious medical needs on the part of the named Defendants who

were/are in the medical department of the federal prison, *i.e.*, PA H. Sexauer; former Health Services Administrator F. Terrera-Leibel; current Health Services Administrator S. Slone; and Clinical Director R. Rameriz. Therefore, summons will issue for these Defendants to respond to McKenzie's allegations.

However, the remaining Defendants had no role to play in the medical decisions complained of. Plaintiff asserts that Warden Rios, Regional Director White, and National Director Watts have permitted or not corrected the policy or actions of these 4 members of the medical department of USP-Big Sandy. Such allegations do not contain any description of their personal involvement in the violation of his rights; rather, such allegations fault them only in their supervisory roles. Because they had no personal role with regard to the medical or financial decisions which were made about McKenzie in the six-month period which is the focus of this lawsuit, these three BOP administrative Defendants are entitled to dismissal without prejudice. *See Shehee v. Luttrell*, 199 F.3d 295, 299-300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000).

With regard to the four Defendants for whom summons will issue, the Plaintiff does not mention capacity. However, it is well established that when damages are sought against federal employees in their official capacities, the damages in essence are sought against the United States, which has sovereign immunity, and so such claims cannot be maintained. *Myers & Myers, Inc. v. United States Postal Serv.*, 527 F.2d 1252, 1256 (2d Cir. 1975); *Morris v. United States*, 521 F.2d 872, 874-75 (9th Cir. 1975).

As a result, federal jurisdiction under 28 U.S.C. § 1331 may be exercised against federal officers for damages only in their *individual* capacities for violations of constitutional or other rights under the doctrine of *Bivens*. *Davis v. Passman*, 442 U.S. 228 (1979). Thus, Plaintiff's

constitutional claims against the remaining federal defendants in their official capacities for money damages under Section 1331 are barred by the doctrine of sovereign immunity and such claims are to be dismissed. *Garcia v. United States*, 666 F.2d 960 (5th Cir. 1982), *cert. denied*, 459 U.S. 832.

As to the three purported federal claims asserted herein, two are grounded in the U.S. Constitution. Plaintiff has appropriately plead that the four medical defendants were deliberately indifferent to his serious medical needs and supplied supporting factual allegations, consistent with the Constitutional standards for stating an Eighth Amendment claim, as discussed in *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). With regard to his equal protection claim, however, he has failed to plead or allege that any of the defendants acted with the discriminatory animus necessary to state such a claim.

The equal protection clause requires that all persons similarly circumstanced shall be treated alike. *Canterino v. Wilson*, 546 F. Supp. 174, 206 (6th Cir. 1982) (quoting *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920)). To state a cognizable equal protection claim, however, a "plaintiff could not make out a violation of his equal protection rights simply by showing that other inmates were treated differently." *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992), *cert. denied*, 114 S. Ct. 127 (1993). Rather, the plaintiff must show that he "was victimized because of some suspect classification, which is an essential element of an equal protection claim." *Id.* (citing *Booher v. United States Postal Service*, 843 F.2d 943, 944 (6th Cir. 1988)). As the instant Plaintiff has not made such a showing, no cognizable equal protection claim has been stated, and dismissal of this claim is appropriate.

The Court turns to the Plaintiff's two remaining motions. McKenzie has filed a Motion

for Appointment of Counsel on the ground that he is indigent, has limited access to prison law library because he is in the prison's special housing, and he is too untrained to be able to examine witnesses. The Court hereby advises McKenzie that a district court has discretion to appoint counsel for an indigent civil litigant. 28 U.S.C. § 1915(e). However, in determining whether to exercise this discretion, the federal court must consider certain factors:

> Appointment of counsel in a civil case is not a constitutional right. It is a privilege that is justified only by exceptional circumstances. In determining whether exceptional circumstances exist, courts have examined the type of case and the abilities of the plaintiff to represent himself. This generally involves a determination of the complexity of the factual and legal issues.

*Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993) (citations omitted) (quotation marks omitted). "The appointment of counsel to civil litigants is a decision left to the sound discretion of the district court, and this decision will be overturned only when the denial of counsel results in 'fundamental unfairness impinging on due process rights.'" *Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992) (citations omitted).

Having considered the Plaintiff's request in light of these principles, the Court finds that exceptional circumstances warranting appointment of counsel do not exist. This action presents a straightforward claim of deliberate indifference to one's serious medical needs. The issues in this action are not complex and do not warrant the appointment of counsel. Therefore, this motion will be denied.

In a final and unusual motion, McKenzie seeks an order requiring him to type all of his pleadings. He claims to have bad handwriting and he is worried that the Court and the Defendants will be unable to accurately read his submissions. He is not permitted to use a typewriter in the special housing unit "without a court order." Therefore, he asks that the Court

order that his submissions be typewritten. In his submissions to date, however, Plaintiff has shown himself able to express himself and to do so legibly. The Court finds no reason to anticipate that he will not be able to communicate otherwise in the future. Therefore, the Motion for an Order to Require Typewritten Pleadings will be denied.

Accordingly, **IT IS ORDERED** as follows:

(1) The following are **DISMISSED**, *sua sponte*, without prejudice: (a) Defendants Hector A. Rios, Jr.; K.M. White; and H. Watts; (b) all claims for damages against the four remaining Defendants, F. Terrera-Leibel, S. Slone, H. Sexauer, and R. Rameriz, in their official capacities; and (c) the Plaintiff's equal protection claim.

(2) The Clerk in the divisional office in which the case lies shall prepare and issue summons for F. Terrera-Leibel, S. Slone, H. Sexauer, and R. Rameriz, in their official and individual capacities; in addition to the summonses, the Clerk shall make two sets of copies of the summonses and mark one set to be served on the United States Attorney General and one set to be served on the United States Attorney for the Eastern District of Kentucky.

(3) The Divisional Clerk shall also prepare as many copies of the complaint and this Order as there are summonses and any required USM Forms 285. If insufficient information exists to sufficiently or effectively complete any summons or USM Form 285 regarding any Defendant, the Clerk shall promptly make a clerk's entry on the docket stating why the Clerk cannot fill out the summons or USM Form 285 or any other documents necessary to effectuate service.

(4) After the Divisional Clerk's office has prepared the summonses, USM Forms 285, complaint copies, copies of this Order, and/or any other documents necessary to effectuate

service, a Deputy Clerk shall forward said documents, by certified mail, to the United States Marshal's office in Lexington, Kentucky.

(5) The Divisional Clerk shall enter the certified mail receipt into the instant record.

(6) The United States Marshal shall serve a summons, complaint copy, and copy of this Order on each named Defendant for whom a summons has been prepared and shall serve copies of the documents on the United States Attorney General, in Washington, D.C. and on the United States Attorney for the Eastern District of Kentucky, all service to be made by certified mail, return receipt requested.

(7) The United States Marshal shall make a return report to the Court of whether the summons is executed or is still unexecuted within forty (40) days of the date of entry of this Order.

(8) The plaintiff shall keep the Clerk of the Court informed of his current mailing address. Failure to notify the Clerk of any address change may result in a dismissal of this case.

(9) For every further pleading or other document he wishes to submit for consideration by the court, the Plaintiff shall serve upon each Defendant, or, if appearance has been entered by counsel, upon each attorney, a copy of the pleading or other document. The Plaintiff shall send the original papers to be filed with the Clerk of the Court together with a certificate stating the date a true and correct copy of the document was mailed to each Defendant or counsel. If a District Judge or Magistrate Judge receives any document which has not been filed with the Clerk or which has been filed but fails to include the certificate of service of copies, the document will be disregarded by the Court.

(10) Plaintiff's Motion for Appointment of Counsel [Record No. 4] is **DENIED**.

(11)   Plaintiff's Motion for a Court Order Requiring Typewriting [Record No. 5] is

**DENIED**.

This the 24th day of August, 2007.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge